

March 21, 2022

*Via E-mail – aadnani@uraniumenergy.com*
Mr. Amir Adnani
Uranium Energy Corp.
1830 – 1030 West Georgia Street
Vancouver, BC V6E 2Y3

Dear Mr. Adnani:

  We represent Drew Ciccarelli and his company TSX Ventures, LLC ("TSX") in this matter.  We write with respect to certain stock options that your company Uranium Energy Corp. ("UEC") granted to Mr. Ciccarelli in 2017 as a result of a consulting agreement that TSX entered into with UEC on or about May 9, 2017 (the "Consulting Agreement").  You have told Mr. Ciccarelli that these stock options have ceased to exist.  For the reasons set forth below, we strongly disagree with that conclusion.  Mr. Ciccarelli now seeks to exercise those stock options, which are fully vested, and we have attached a notice of election to exercise in substantially the form set forth in Exhibit B of the Stock Option Agreement between UEC and Mr. Ciccarelli, dated as of May 9, 2017 (the "Stock Option Agreement"), to effectuate his exercise of the stock options.  Kindly process the stock option exercise accordingly as quickly as possible.

  Under the terms of the Consulting Agreement, TSX was to provide consulting services to UEC for a term of three months commencing on May 9, 2017 (the "Effective Date").  Thus, by its express terms, the consultancy was to run until August 9, 2017.  *See* Consulting Agreement, Section 1.b.  As compensation for TSX's services, UEC agreed to pay $20,000 and granted Mr. Ciccarelli 50,000 options to purchase UEC stock (the "Stock Options") at $1.35 per share, vesting in four equal tranches of 12,500 options according to the following schedule:

- First tranche:  August 9, 2017;
- Second tranche:  November 9, 2017;
- Third tranche:  May 9, 2018 (incorrectly listed in the Consulting Agreement as "May 9, 2017"); and
- Fourth tranche:  November 9, 2018.

  Thus, the first tranche of Stock Options was to vest on the date the Consulting Agreement ended, the second tranche was to vest three months later, and the final two tranches were to vest well beyond the end date of the Consulting Agreement (9 and 15 months, respectively).  Phrased differently, only 50% of the Stock Options were to vest within three months of the end of the Consulting Agreement.  As of today, all 50,000 Stock Options have vested.

In December 2020, Mr. Ciccarelli contacted UEC regarding exercising the Stock Options. In a letter dated December 15, 2020 (attached hereto), UEC informed Mr. Ciccarelli of its position that the Stock Options "ceased to exist 90 days from the date" that "your prior consulting services for the Company" ended in 2017. In support of that erroneous position, UEC pointed to Sections 5 and 11 of the Stock Option Agreement and UEC's 2016 Stock Option Plan (the "Plan").

But under the plain terms of the Stock Option Agreement, the Stock Options are to terminate on *May 9, 2022*, and "may not be exercised after that date." *See* Stock Option Agreement, Section 5. Section 5 sets forth the situations where the Stock Options would terminate earlier than May 9, 2022, *i.e.*, in the event that Mr. Ciccarelli "terminates Continuous Service" with UEC. In UEC's December 2020 letter, UEC appeared to rely on Section 5(a) of the Stock Option Agreement as the basis to claim that the Stock Options terminated in 2017. Plainly, this subsection does not support UEC's argument as Mr. Ciccarelli never terminated Continuous Service with UEC.

Subsection 5(a) of the Stock Option Agreement states, in relevant part, as follows:

> An Option may be exercised following the termination of the Optionee's Continuous Service (as defined in the Plan) only as described below, provided however, that the Option shall terminate to the extent not exercised on the earlier of: (i) last day of the period provided above; (ii) the Expiration Date [May 9, 2022], or (iii) up to ten years from the Grant Date [May 9, 2017] . . ., whichever occurs first: . . .
>
> (a) if for any reason other than Disability (as defined in the Plan) or death, the Optionee [Mr. Ciccarelli] terminates Continuous Service, vested Options held at the date of such termination may be exercised, in whole or in part, at any time within three months after the date of such termination."

First, it is unclear what period the Stock Option Agreement refers to in Section 5(a)(i), and the other two dates have yet to occur – May 9, 2022 and May 9, 2027 (ten years from the Grant Date). Second, that clause only applies if Mr. Ciccarelli terminates Continuous Service, as defined by the Plan. Mr. Ciccarelli has not terminated Continuous Service; therefore, Section 5(a)(i) does not apply to terminate the Stock Options prior to May 9, 2022. Any other interpretation would defeat the entire purpose of the Stock Option Agreement – which is to compensate Mr. Ciccarelli for his work on behalf of UEC. If the Stock Options were to terminate three months after the Consulting Agreement ended, as you claim, why would Mr. Ciccarelli have agreed to a compensation structure based nearly entirely on stock options when half of the Stock Options were not scheduled to vest until more than three months after the end

of the Consulting Agreement? Under that view, Mr. Ciccarelli never would have been able to exercise half of the Stock Options, and the second tranche of Stock Options would have vested on the day the consultancy ended. This purported interpretation makes no sense and no finder of fact could ever adopt it.

Clearly, the parties contemplated that Mr. Ciccarelli would have the opportunity to exercise all 50,000 Stock Options prior to the Expiration Date, *i.e.*, May 9, 2022. Mr. Ciccarelli is now doing so. We respectfully request that UEC process that exercise as quickly as possible to avoid unnecessary litigation. This letter is without any waivers, etc.

Sincerely,

Adam Ford