**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

DREW CICCARELLI and TSX VENTURES,
LLC

          Plaintiffs,

    v.

URANIUM ENERGY CORP.

          Defendant.

Case No. 2:24-cv-01888-BHH

**MEMORANDUM OF POINTS AND AUTHORITIES**
**<u>IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Introduction .................................................................................................1

**STATEMENT OF FACTS** ......................................................................2

**STANDARD OF REVIEW** .....................................................................3

**ARGUMENT** ..........................................................................................4

    **I.** **Plaintiffs' Breach of Contract Claim is Barred by the Statute of Limitations and Must be Dismissed with Prejudice.**..................5

    **II. The Same Statute of Limitations Bars Declaratory Judgment.** ...............7

    **III.** **Plaintiffs Fail to Plead a Breach of Contract Claim.** ...........................8

       A. By Bringing a Breach of Contract Claim, Plaintiffs Cannot Subsequently Dispute the Validity of the Contracts. ........................................................9

       B. All Unvested Options Terminated When Plaintiffs' Contract Ended......12

       C. Plaintiffs Fail to Plead That They Ever Exercised the Vested Tranche of Stock Options. ........................................................................13

**CONCLUSION**.....................................................................................14

**[PROPOSED] ORDER** ........................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 3, 4

*Belimed, Inc. v. Bleecker*, No. 2:22-cv-00891-DCN, 2022 U.S. Dist. LEXIS 56855 (D.S.C. March 29, 2022) .................................................................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 3

*Brazell v. Windsor*, 384 S.E. 512 (2009) ...................................................................... 13

*Cox v. Paryank Remesh Shah*, 1999 U.S. App. LEXIS 15750 (4th Cir. July 13, 1999) ............. 12

*Davies v. WTD Holdings, Inc.*, No. 3:19-cv-02122-JMC, 2020 U.S. Dist. LEXIS 61877 (D.S.C. Apr. 8, 2020) ................................................................................... 10, 11

*E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ...................... 4

*El-Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 U.S. Dist. LEXIS 22699 (D.S.C. Feb. 20, 2013) ......................................................................... 4

*Furman Univ. v. Waller*, 124 S.C. 68 (1923) ............................................................... 11

*Gilbert v. Wells Fargo Bank, N.A.*, No. 2:23-cv-04448-RMG, 2023 U.S. Dist. LEXIS 187074 (D.S.C. Oct. 17, 2023) ......................................................................... 4

*Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc) ............................................... 4

*JTH Tax, Inc. v. Hines*, No. 2:15-cv-558, 2017 U.S. Dist. LEXIS 218756 (E.D. Va. Dec. 15, 2017) ....................................................................................................... 11

*Lamers v. Organizational Strategies, Inc.*, No. 1:08CV101(LMB/TCB), 2008 WL 7795163 (E.D. Va. Mar. 24, 2008) ....................................................................... 7

*Leask v. Robertson*, 589 F. Supp. 3d 506 (D.S.C. 2022) ................................................... 5

*Maher v. Tietex Corp.*, 331 S.C. 371 (Ct. App. 1998) ..................................................... 5

*Midwest Dredge & Excavating, Inc. v. Bay Pointe Homeowner's Assoc., Inc.*, No. C/A2:06-

2021-DCN, 2007 WL 7141921 (D.S.C. May 15, 2007) ........................................................ 6

*Miller v. Wal-Mart Assocs., Inc.*, No. 5:22-cv-0803-JFA, 2022 U.S. Dist. LEXIS 69118 (D.S.C.

April 14, 2022) ...................................................................................................................... 7

*Nucor Corp. v. Bell*, 482 F. Supp. 2d 714 (2007) ........................................................................ 7

*Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999). ...................................................................... 4

*Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-cv-01964-JMC, 2018 U.S. Dist. LEXIS 145907

(D.S.C. Aug. 27, 2018)........................................................................................................... 8

*Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385 (Ct. App. 1998) ................... 11

*Richmond, Fredericksburg & Potomac R. Co. v. Forst.*, 4 F.3d 244 (4th Cir. 1993) ................... 4

*Robinson v. Anmed Encompass Health Rehab. Hosp., LLC*, No. 819CV01324DCCJDA, 2019

WL 7756182 (D.S.C. Oct. 17, 2019) ...................................................................................... 6

*Roe v. Doe*, 28 F.3d 404 (4th Cir. 1994)............................................................................... 6, 7

*Sharpe v. Household Fin. Corp. II*, No. 8:09-CV-02784-JMC, 2010 U.S. Dist. LEXIS 105235

(D.S.C. Sept. 20, 2010) .......................................................................................................... 6

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131 (4th Cir. 2014)

............................................................................................................................................... 5

*Vaughn v. Gordian Med., Inc.*, No. 6:22-cv-00675-DCC, 2023 U.S. Dist. LEXIS 46394 (D.S.C.

March 20, 2023) .................................................................................................................... 11

*Walker v. Intermark Mgmt. Corp.*, No. 2020-CP-26-07091, 2021 S.C. C.P. LEXIS 2749 (Feb.

26, 2021)................................................................................................................................. 7

*Wallace v. Cougar Columbia Hudson, LLC*, No. 3:23-5903-MGL-SVH, 2024 U.S. Dist. LEXIS

71923 (D.S.C. March 29, 2024).............................................................................................. 3

*Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 U.S. Dist. LEXIS

    146435 (D.S.C. Oct. 10, 2013) ................................................................................. 9

**Statutes**

S.C. Code Ann. § 15-3-530(1) ................................................................................. 5, 8

S.C. Code Ann. § 15-53-20 ......................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1, 3, 4

## INTRODUCTION

The Court should dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Drew Ciccarelli and TSX Ventures, LLC ("Plaintiffs") cannot state a claim for breach of contract or declaratory judgment against Defendant Uranium Energy Corp. ("Defendant"). because the claims are clearly time-barred by South Carolina's three-year statute of limitations. Plaintiffs knew on December 15, 2020 that Defendant would not award Plaintiffs any stock options yet they chose not to file the complaint until April 2024, after the statute of limitations had run. Because Plaintiffs' request for a declaratory judgment is based upon the breach of contract claim, it too is barred by the same statute of limitations.

Further, even if the complaint wasn't barred by the statute of limitations (which it is), Plaintiffs *still* fail to state a claim upon which relief may be granted because the allegations in the complaint and express language of the two contracts attached thereto demonstrate that Defendant did not breach the governing contracts. First, the clear language of the Stock Option Agreement expressly states that all <u>unvested stock options</u> terminated when Plaintiffs' contractual relationship with Defendant ended. *See* Dkt 1-1, Ex. A Consulting Agreement § 1.b. If Plaintiffs took issue with the termination period of unvested options, they should have – and could have – negotiated different terms instead of retroactively attacking the valid terms by filing this untimely lawsuit. Second, Plaintiffs failed to plead that they attempted to exercise the <u>vested stock options</u> properly pursuant to the agreements by submitting a Notice of Election form before they terminated on November 7, 2017. *See* Complaint ¶ 10 ("Compl."); Dkt. 1-2, Ex. C; Stock Option Agreement §5. Indeed, Plaintiffs pleaded that they first attempted to exercise vested options in "late 2020," ***approximately three years*** after they had terminated. Defendant had no contractual obligation to

honor an untimely, invalid attempt to exercise options, had they even existed. Defendant did not breach the contracts. Therefore, Plaintiffs cannot state a claim upon which relief may be granted. For these reasons, the Court must dismiss this action with prejudice.

### STATEMENT OF FACTS

The following facts are taken from the complaint and from the agreements attached thereto. In 2017, Plaintiffs entered into two agreements with Defendant that governed the relationship between the parties. The first was a Consulting Agreement dated May 10, 2017 (the "Consulting Agreement") between Defendant and TSX Ventures, LLC, with Plaintiff Ciccarelli as the signatory for the LLC. The second was a Stock Option Agreement dated and made effective as of May 9, 2017 (the "Stock Option Agreement.") between Defendant and Plaintiff Ciccarelli. Compl. ¶ 6. The Consulting Agreement set forth a three-month term, commencing May 9, 2017, and ending on August 9, 2017. Consulting Agreement § 1.b. The Consulting Agreement also provided that "[a]t the conclusion of the Term, this Agreement will terminate and be of no further force and effect." *Id.*; Compl. ¶ 8. The Stock Option Agreement listed the following compensation in Paragraph 2.a.: A $20,000 retainer payment and 50,000 stock options granted at a strike price of $1.35 per share to be vested in 25% tranches, following a vesting schedule of 25% per tranche, "one each of August 9, 2017, November 9, 2017, May 9, 2017 [*sic*], and November 9, 2018." Compl. ¶ 9. The express language of the Stock Option Agreement stated that all unvested stock options terminated ***immediately*** on August 9, 2017, when Plaintiffs' employment with Defendant ended. Stock Option Agreement § 5; Consulting Agreement § 1.b. All vested stock options terminated on November 7, 2017, three months after Plaintiffs' employment with Defendant ended. *See* Stock Option Agreement § 5(a) ("if for any reason other than Disability (as defined in the Plan) or death, the Optionee terminates Continuous Service, vested options held at the date of

such termination may be exercised, in whole or in part, ***at any time within three months after the date of such termination***.") (emphasis added). To exercise the vested stock options, Plaintiffs had to deliver a Notice of Election form, specifying the number of shares to be purchased, to Defendant's principal executive office with full payment of the exercise price. *Id.* at § 7.

Plaintiffs did not attempt to exercise the vested options until "late 2020." Compl. ¶ 10. In response to this untimely and invalid attempt, Defendant sent Plaintiffs an email dated December 15, 2020, informing them that the vested options terminated on November 7, 2017, 90 days after the consulting services ended. *See* Compl. ¶ 10; Dkt. 1-2, Ex. C; Stock Option Agreement §5. After no further correspondence for nearly two years, Plaintiffs then decided to follow up with Defendant on January 26, 2024 regarding the options claimed to have vested (which had terminated approximately seven years prior). Compl. ¶ 11-12. Plaintiffs then filed this untimely complaint on April 15, 2024, alleging that Defendant breached the contracts by refusing to honor their alleged attempt to exercise vested options long after they had terminated.

## STANDARD OF REVIEW

A court can dismiss an action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. *See Wallace v. Cougar Columbia Hudson, LLC*, No. 3:23-5903-MGL-SVH, 2024 U.S. Dist. LEXIS 71923, at *6-*7 (D.S.C. March 29, 2024) (dismissing breach of contract claims under Rule 12(b)(6) for failure to state a claim). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* at 663. When considering a Rule 12(b)(6) motion, the Court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the Plaintiff. *See Gilbert v. Wells Fargo Bank, N.A.*, No. 2:23-cv-04448-RMG, 2023 U.S. Dist. LEXIS 187074, at *3 (D.S.C. Oct. 17, 2023) (citing *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999)). While the Court must accept the facts in a light most favorable to the plaintiff, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (citing *E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

A defendant can raise a statute of limitations affirmative defense in a motion to dismiss under Rule 12(b)(6), as long as all facts necessary to the affirmative defense clearly appear on the face of the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (holding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) can reach the merits of an affirmative defense when facts sufficient to rule on the affirmative defense clearly appear on the face of the complaint and the complaint clearly "allege[s] all facts necessary to the affirmative defense."); *El-Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 U.S. Dist. LEXIS 22699, at *2 (D.S.C. Feb. 20, 2013) (stating that a defendant can raise a statute of limitations defense in a motion to dismiss); *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (holding an affirmative defense may be raised under Rule 12(b)(6), "but only if it clearly appears on the face of the complaint.").

## **ARGUMENT**

The Court should dismiss this action with prejudice for two reasons. First, the complaint is time-barred under South Carolina law. Second, the complaint fails to state a claim upon which relief can be granted because, on the face of the Stock Option Agreement, there was no breach as the underlined unvested stock options terminated immediately when Plaintiffs' three-month contract ended,

and Plaintiffs fail to allege that they followed the necessary steps to execute the <u>vested stock options</u> before they terminated.

**I.      Plaintiffs' Breach of Contract Claim is Barred by the Statute of Limitations and Must be Dismissed with Prejudice.**

Both the Consulting Agreement and Stock Options Agreement are attached to the complaint and can thus be relied on for a motion to dismiss. *Leask v. Robertson*, 589 F. Supp. 3d 506, 517 (D.S.C. 2022) (stating it is "well established that in considering a Rule 12(b)(6) motion, courts may consider 'documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'") (citing *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)). The parties do not dispute that South Carolina law governs, as dictated by the choice of law provision in the Consulting Agreement. Compl. ¶ 5 ("[I]n the Consulting Agreement the parties. . . specifically agreed that the laws of the State of [South] Carolina shall govern."); Consulting Agreement § 8. *See Belimed, Inc. v. Bleecker*, No. 2:22-cv-00891-DCN, 2022 U.S. Dist. LEXIS 56855, at *16 (D.S.C. March 29, 2022) (applying South Carolina law pursuant to the contract's choice-of-law provision); *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (2007) ("Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law.").

In South Carolina, "[a]n action for breach of contract must be brought ***within three years*** from the date the action accrues." *Maher v. Tietex Corp.*, 331 S.C. 371, 376 (Ct. App. 1998) (emphasis added); S.C. Code Ann. § 15-3-530(1). A breach of contract action "accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence." *Id.* at 377 (citation omitted) (explaining that cause of action should have been discovered "when the facts

and circumstances would have put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist.") South Carolina's statute of limitations requires "very little to start the clock." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (applying South Carolina law).

This Court has granted similar motions under Rule 12(b)(6) on the basis that the claims were barred by South Carolina's general three-year breach of contract statute of limitations. *See Midwest Dredge & Excavating, Inc. v. Bay Pointe Homeowner's Assoc., Inc.*, No. C/A2:06-2021-DCN, 2007 WL 7141921, at *5 (D.S.C. May 15, 2007) (applying South Carolina law and dismissing breach of contract claim filed after the statute of limitations had run). In *Midwest Dredge & Excavating, Inc.*, for example, based on Bay Pointe's "own allegations," the Court held that it knew that plaintiff breached the contract in 2001 when the contract completion deadline passed but plaintiff still had not completed the work. *Id.* at *2-*3. Under the terms of the performance bond agreement between Bay Pointe and third-party defendant American Manufacturers Mutual Insurance Company ("AMMIC"), when the plaintiff breached, then Bay Pointe had a claim against AMMIC. *See id.* at *3. But Bay Pointe waited until 2006 to bring the claim. *See id.* at *3, *5. Because Bay Pointe filed its lawsuit against the AMMIC outside of the three-year statute of limitations but knew within that three-year period of the breach, the claim was time-barred. *See id.* at *5. *See also Robinson v. Anmed Encompass Health Rehab. Hosp., LLC*, No. 819CV01324DCCJDA, 2019 WL 7756182, at *6 (D.S.C. Oct. 17, 2019, *R. & R. adopted*, No. 819CV01324DCCJDA, 2020 WL 419627 (D.S.C. Jan. 27, 2020) (same); *Sharpe v. Household Fin. Corp. II*, No. 8:09-CV-02784-JMC, 2010 U.S. Dist. LEXIS 105235 (D.S.C. Sept. 20, 2010) (same).

The same is true here. Based on Plaintiffs' own allegations, Plaintiffs knew in 2020 that Defendant allegedly breached the Stock Options Agreement, but Plaintiffs waited until the statute of limitations ran to file the lawsuit. Specifically, Plaintiffs allege that they "attempted" to exercise the vested options in "late 2020." Compl. ¶ 10. On December 15, 2020, Defendant's Chief Financial Officer sent Plaintiff Ciccarelli a letter informing him that the vested options terminated 90 days after the consulting services ended. *Id.*; Dkt. 1-3, Ex. C. Receipt of this letter put Plaintiffs on notice that a breach of contract claim against Defendants might exist, thereby "start[ing] the clock" for the three-year statute of limitations. *Roe*, 28 F.3d at 407. The statute of limitations ran on December 23, 2023. Plaintiffs should have filed this lawsuit then, or ***any time*** from December 15, 2020 to December 23, 2023. Instead, they waited until April 15, 2024 to file this lawsuit – long after the statute of limitations had run.[1] Thus, the untimely complaint fails as a matter of law because it is time-barred and must be dismissed with prejudice. *See Walker v. Intermark Mgmt. Corp.*, No. 2020-CP-26-07091, 2021 S.C. C.P. LEXIS 2749, at *2 (Feb. 26, 2021) ("[T]his action is hereby dismissed with prejudice as the causes of action set forth in the Complaint are barred on their face by the Statute of Limitations which has run as to each cause of action."); *Miller v. Wal-Mart Assocs., Inc.*, No. 5:22-cv-0803-JFA, 2022 U.S. Dist. LEXIS 69118, at *6 (D.S.C. April 14, 2022) (dismissing retaliation claim with prejudice because it was barred by the applicable statute of limitations).

## II.    The Same Statute of Limitations Bars Declaratory Judgment.

---

[1]*See also Lamers v. Organizational Strategies, Inc.*, No. 1:08CV101(LMB/TCB), 2008 WL 779516, at *3 (E.D. Va. Mar. 24, 2008). There, the court dismissed plaintiff's breach of contract claims related to the defendant's failure to distribute stock options because the complaint was barred by Virginia's five-year, breach of a written contract statute of limitations. Like in *Lamers*, the Court should dismiss this action as time-barred because Plaintiffs failed to file this lawsuit within three years of when they learned Defendant would not distribute the stock options. *Id.* at *2 ("According to the complaint, [defendant] failed to distribute the stock options on November 1, 2000. Accordingly, any action for breach of the written agreement should have been brought by November 1, 2005. The instant complaint, filed on January 31, 2008, is therefore untimely.").

Plaintiffs seek a declaratory judgment under S.C. Code Ann. § 15-53-20 to confirm that (a) their vested stock options did not terminate until May 9, 2022; (b) the Notice of Election form allegedly dated and submitted on March 21, 2022, was valid and timely; and (c) Plaintiffs therefore were entitled to exercise 50,000 stock options (even though only 25% had vested under the contracts). Compl. ¶ 19. The request for declaratory judgment fails as a matter of law for the same reason the breach of contract fails – because it is barred by South Carolina's three-year statute of limitations for breach of contract actions under S.C. Code Ann. § 15-3-530(1). It is well established that claims for declaratory relief are governed by the period of limitations applicable to the substantive claims underlying the action. *See Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-cv-01964-JMC, 2018 U.S. Dist. LEXIS 145907, at *12 (D.S.C. Aug. 27, 2018). A declaratory judgment is a remedy, not a right or independent claim. *Id.* at *9. Because the breach of contract claim - the substantive claim underlying the request for declaratory judgment - is barred by the statute of limitations, it follows that the request for declaratory relief is also time barred and also must be dismissed with prejudice.

### III.     Plaintiffs Fail to Plead a Breach of Contract Claim.

Even if the complaint were not time barred (which it is), Plaintiffs still fail to plead a breach of contract claim because they never exercised the stock options under the contracts before they terminated. The allegations in the complaint arise not from Defendant's breach, but instead from Plaintiffs' misinterpretation of the applicable contractual provisions. *See* Compl. ¶ 10 (alleging that "[t]he options granted in the Stock Option Agreement were fully vested as of November 9, 2018" and that the options terminated on May 9, 2022). Plaintiffs failed to follow the necessary

steps outlined in the Stock Option Agreement to exercise their vested tranche of options before they expired on November 7, 2017.

Under the plain language of the two contracts, the alleged 50,000 stock options fall into two categories: <u>unvested stock options</u> and <u>vested stock options</u>, because each category has its own distinct termination date under the Stock Option Agreement, both of which Plaintiffs never met. *See* Stock Option Agreement § 5. First, regarding the <u>unvested stock options</u>, the express language of the Stock Option Agreement states that all unvested stock options terminated ***immediately*** upon the termination of the parties' contractual relationship on August 9, 2017. Stock Option Agreement § 5

Second, regarding the <u>vested stock options</u>, Plaintiffs' complaint is devoid of any allegations that they attempted to exercise the 25% vested tranche before those options terminated on November 7, 2017 – 90 days after Plaintiffs' employment with Defendant ended on August 9, 2017. Stock Option Agreement § 5(a). Instead, they only allege that they "attempted" to exercise 50,000 options in "late 2020," and on March 21, 2022. Compl. ¶¶ 11, 14-15. Because Plaintiffs never allege that they properly exercised any vested options, Defendant did not breach the contracts.

A. <u>By Bringing a Breach of Contract Claim, Plaintiffs Cannot Subsequently Dispute the Validity of the Contracts.</u>

Plaintiffs cannot base their complaint upon the validity of the Consulting Agreement and Stock Options Agreement and subsequently argue that the agreements were invalid. "It is axiomatic that to recover under a theory of breach of contract, a valid contract must have existed between the parties." *Weaver v. John Lucas Tree Expert Co.*, No. 2:13-CV-01698-PMD, 2013 U.S. Dist. LEXIS 146435, at *12 (D.S.C. Oct. 10, 2013). The first element of a breach of contract claim is satisfied when "neither party disputes that the [agreement] constituted a binding contract between

[the parties] . . ." *See Davies v. WTD Holdings, Inc.*, No. 3:19-cv-02122-JMC, 2020 U.S. Dist. LEXIS 61877, at *6 (D.S.C. Apr. 8, 2020). By stating that an agreement constitutes a valid contract, a party admits there was appropriate consideration. *Id.*, at *7 ("Because [plaintiff] admits the Severance Agreement constitutes a valid contract, he therefore admits that [defendant] paid valuable consideration to him."). In *Davies*, for instance, plaintiff brought a breach of contract claim against defendant, and defendant brought a counterclaim alleging that plaintiff breached the same contract. *See id.* at *3. Neither party disputed the validity of the contract at issue. *See id.* at *6. The Court denied plaintiff's motion to dismiss in large part because plaintiff admitted the validity of the contract by filing his own breach of contract claim and therefore conceded that defendant paid him valuable consideration. *See id.* at *7.

Like the plaintiff in *Davies* who could not contest the validity of the very contracts he claimed defendant breached, Plaintiffs here admitted that both the Consulting Agreement and Stock Option Agreement are valid and enforceable contracts given that Plaintiffs pleaded a breach of both contracts in their complaint. *See* Compl. ¶ 5, 14. And, like the plaintiff in *Davies* who conceded he received valuable consideration for the contracts, so too does Plaintiffs. Indeed, Plaintiffs recognized in their complaint that in consideration for the services, Defendant agreed to pay a $20,000 retainer fee and issue stock options. Compl. ¶ 9.

Nonetheless, in their March 21, 2022 letter to Defendant, Plaintiffs did exactly that. They complain that there was invalid consideration where Plaintiff Ciccarelli's options either did not vest by the time the contract ended or vested, and he did not properly execute them. *See* Dkt, 1-4, Ex. D. In fact, Plaintiffs had received a $20,000 retainer payment and the opportunity to exercise their stock options for the 25% vested tranche. Compl. ¶ 9.

Conveniently, these allegations are left out of the complaint, and Plaintiffs make no mention of insufficient consideration or any other problem with the validity of the contracts. To do so would undermine their claims. *See Furman Univ. v. Waller*, 124 S.C. 68, 117 (1923) (providing a "[p]romise for a promise is sufficient consideration" to support a bilateral contract); *Evatt v. Campbell*, 234 S.C. 1, 8 (1959) ("Mutual promises also constitute a good consideration." (citation omitted)); *see also Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385, 389 (Ct. App. 1998) ("Valuable consideration "may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." (citation omitted)). In fact, unvested interest in equity units, like the 75% of the stock options here, are "more than sufficient consideration" for consent to an agreement. *Vaughn v. Gordian Med., Inc.*, No. 6:22-cv-00675-DCC, 2023 U.S. Dist. LEXIS 46394, at *7 (D.S.C. March 20, 2023). *See also JTH Tax, Inc. v. Hines*, No. 2:15-cv-558, 2017 U.S. Dist. LEXIS 218756, at *18 (E.D. Va. Dec. 15, 2017) (dismissing allegation that contracts failed to provide any consideration when Plaintiff "was given some of the consideration [listed in the contract].").

Plaintiffs cannot have it both ways: file a lawsuit based on the existence and alleged breach of a valid contract and then subsequently argue that there was insufficient consideration during the formation of that same contract. Like in *Davies*, the Court should recognize that neither party is disputing the fact that the agreements "constituted [] binding contract[s] between them" and that by recognizing the contracts, the issue of consideration should be undisputed as well. 2020 U.S. Dist. LEXIS 61877, at *7 (2020). Thus, Plaintiffs have pleaded themselves out of any subsequent arguments that the agreements were invalid since they already regarded the agreements as valid contracts for their breach of contract claim. *See Davies*, 2020 U.S. Dist. LEXIS 61877, at *6 (2020).

11

B. <u>All Unvested Options Terminated When Plaintiffs' Contract Ended.</u>

Section 5 of the Stock Option Agreement states: "Unvested Options granted pursuant hereto shall terminate ***immediately upon termination of the Optionee's employment or contractual relationship with the Company*** . . ." (emphasis added). Per the Consulting Agreement, Plaintiffs' employment was for a three month period from May 9, 2017 through August 9, 2017. Consulting Agreement § 1.b. A reading of these two clauses together makes clear that all unvested options[2] terminated ***immediately*** when Plaintiffs' employment with Defendant ended on August 9, 2017. *See Cox v. Paryank Remesh Shah*, 1999 U.S. App. LEXIS 15750, at *19 (4th Cir. July 13, 1999) ("Under the plain language approach to contract interpretation, where the relevant contract provision is clear and unambiguous, a court should give effect to the provision's plain meaning.").

The contract was for a three-month period, starting on May 9, 2017, and ending on August 9, 2017. Consulting Agreement § 1.b. (listing three month term and stating "[a]t the conclusion of the Term, this Agreement will terminate and be of no further force and effect."). So, the unvested stock options terminated on August 9, 2017. Stock Option Agreement § 5 ("Unvested Options granted pursuant hereto shall terminate ***immediately upon termination of the Optionee's employment or contractual relationship with the Company*** . . .") (emphasis added). Plaintiffs admit as much in their Complaint. *See* Dkt. 1-4, Ex. D.. (stating that by the "express terms" of the Consulting Agreement, "the consultancy was to run until August 9, 2017."); Compl. ¶ 8 (acknowledging three-month contract term and that the Agreement would terminate and be of no further force and effect at the conclusion of that term). If they took issue with the unvested options

---

[2]Pursuant to the vesting schedule, the first 25% tranche of options were vested on August 9, 2017. Dkt. 1-1, Consulting Agreement § 2.a; Dkt. 1-2, Stock Option Agreement at Ex. A. The remaining tranches never vested.

termination provision, Plaintiffs should have initially negotiated different terms instead of filing this meritless lawsuit.

If Plaintiffs took issue with the vesting schedule or any of the contractual terms, they should have raised those concerns before executing the agreement and negotiated different terms. *See Brazell v. Windsor*, 384 S.E. 512, 518 (2009) (stating that Respondent "could have negotiated" for certain provisions in the contract). They did not do so. Accordingly, based on the plain language of the contract, the unvested options terminated on August 9, 2017, so Plaintiff's complaint must be dismissed with prejudice.

C.   Plaintiffs Fail to Plead That They Ever Exercised the Vested Tranche of Stock Options.

Plaintiffs' own complaint illustrates that they did not exercise the 25% tranche of vested stock options before they terminated on November 7, 2017 – 90 days after the Plaintiffs' contract with Defendant ended on August 9, 2017. The Stock Option Agreement states "if for any reason other than Disability (as defined in the Plan) or death, the Optionee terminates Continuous Service, vested options held at the date of such termination may be exercised, in whole or in part, ***at any time within three months after the date of such termination***." Stock Option Agreement §5(a) (emphasis added). Section 7 of the Stock Option Agreement states the following:

> Each exercise of the Options ***shall*** be by means of delivery of a notice of election to exercise (which may be in the form attached hereto as **Exhibit B**) to the Company at is principal execute office, specifying the number of shares of Common Stock to be purchased and including such representations and agreements requiring the Optionee's investment intent and access to information and other matters, if any, as may be required by the Company to comply with applicable securities laws, together with payment in the amount of the full exercise price for the Common Stock to be purchased.

Dkt. 1-2, Ex. B, Stock Option Agreement § 7 (emphasis added).

Plaintiffs failed to plead *any* facts to indicate that they followed the necessary steps to execute the vested options before November 7, 2017. Plaintiffs only claim that they "attempted"

to exercise 50,000 options in "late 2020," by submitting a "valid and timely" Notice of Election form. Compl. ¶¶ 14-15. They do not attach this Notice of Election form. Then, Plaintiffs allege that they submitted a Notice of Election form on March 21, 2022. Compl. ¶ 11; Dkt. 1-4, Ex. D. This Notice of Election form is also not attached. Absent from their complaint are any allegations that Plaintiffs attempted to exercise any vested stock options before November 7, 2017. The vested tranche had terminated (and were therefore non-existent) approximately three years *before* Plaintiffs first attempted to exercise any options. Because Plaintiffs failed to plead that they properly executed the options[3], their breach of contract claim must fail. Defendants had no contractual obligation to honor any untimely and invalid exercise attempt.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

This 30th Day of May, 2024                    Respectfully submitted,

                                    _____/s/ Jamie R. Demint_____
                                    Jamie R. DeMint (Federal I.D. # 9940)
                                    PARHAM SMITH & ARCHENHOLD
                                    15 Washington Park
                                    Greenville, S.C. 29601
                                    Tel: (864) 432-1796
                                    jdemint@parhamlaw.com

                                    Mark. E. Schamel
                                    *Pro hac vice motion* forthcoming
                                    VENABLE LLP
                                    600 Massachusetts Ave., NW
                                    Washington, D.C. 20001
                                    Tel: (202) 344-4000
                                    meschamel@venable.com

---

[3] If the court finds that Plaintiffs did properly exercise the options for the 25% vested tranche, then Plaintiffs' claim should be limited to only that 25% vested tranche and not the unvested stock options.

14

*Attorneys for Defendant Uranium Energy Corp.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 30th day of May 2024, a copy of the foregoing **Motion to Dismiss** was e-filed and served electronically upon and/or mailed first class, postage prepaid, to:

Theodore Huge, Esq.
Harris & Huge LLC
180 Spring Street
Charleston, S.C. 29403
ted@harrisandhuge.com

Kevin J. O'Brien Esq.
Ford O'Brien Landy LLP
275 Madison Avenue, 24th Floor
New York, N.Y. 10016
kobrien@fordobrien.com

***Attorneys for Plaintiffs***

*/s/ Jamie R. DeMint*

Jamie R. DeMint